IN THE UNITED STATES DISTRICT COURT
EASTEN DISTRICT OF TENNESSEE

UNITED STATES OF AMERICA

v.

Case No.: 2:24-CR-19

STEPHEN O. ANAGOR

## SENTENCING MEMORANDUM

### INTRODUCTION

Pursuant to a plea agreement, Stephen O. Anagor plead guilty to:

**Count Two (2) (conspiracy to commit mail and wire fraud in violation of 18 USC 1341, 18 USC 1343, and 18 USC 1349);**

**Count four (4) (aiding and abetting a coconspirator engaged in aggravated stalking in violation of 18 USC 2261A(2)(B). 18 USC 2261(b)(1), and 18 USC 2), and;**

**Count Thirty-six (36) (aiding and abetting aggravated of identity theft in violation of 18 USC 1028A(a)(1), 18 USC 1028A(b) and 18 USC 2)**.

Post-filing of the plea agreement, a change of plea hearing was set by the Honorable United States District Court Judge Clifton L. Corker on June 25, 2025. The Court at that time ordered the Probation Office to prepare a Presentence Investigation Report and set the matter for sentencing on November 12, 2025, at 9:00am which was later continued by the Court to November 19, 2025, at 2:30pm.in Greeneville, Tennessee. The Probation Office filed its Presentence Report on October 1, 2025. The defendant filed no objections to the report.

1

however, the government filed a number of objections to the report which they contend should enhance the punishment of Mr. Anagor.

Mr. Anagor plead guilty to the offense of conspiracy to commit mail and wire fraud (18 USC 1341,1341,1343, and 1349) and stipulated that two or more persons conspired or agreed to commit the offense and that he knowingly and voluntarily joined the conspiracy. He also plead guilty to aggravated stalking resulting in death (18 USC 2661A(2)(B) and 2261(b)(1), stipulating the use of the mail or any facility of interstate commerce to engage in a course of conduct expected to cause substantial emotional distress which resulted in death of an individual, and aggravated identity theft (18 USC 1028A(a)(1) as outlined in the plea agreement (Paragraph 3: Plea Agreement).

## The Crime

The facts of the case suggest that the primary scheme of the conspiracy was to generate funds from victims through online romance schemes. The defendant, Mr. Anagor , as well as other coconspirators would secure various bank accounts that essentially laundered the funds for individuals in Nigeria. The Nigerian coconspirators secured the funds from victims by various means and directed how and where these funds were to be dispersed. Mr. Anagor had no direct involvement with the victims.

The method and means of securing the funds was carried out by coconspirators in Nigeria who did not provide any notice to Mr. Anagor of their interaction with the Victims. For example as outlined in the plea agreement; the law enforcement scam was carried out solely by the Nigerian coconspirators. They provided no advance notice of those methods used. At the end of the day, the only parties involved were the coconspirators in Nigeria and the Victims. In

fact, when Victim 1 suggested he may kill himself and did so 21days later (See Anagor Plea Agreement paragraphs hh through oo, pages 17 -19) this information was not provided to Mr. Anagor. Mr. Anagor finds out about the death of Victim 1 once arrested.

While Mr. Anagor accepts responsibility for his actions and that death of a victim was within the realm of possibility, the enhancements requested by the government should not be granted. Mr. Anagor had no direct involvement in Victim 1, the question then shifts to whether this matter was a reasonably foreseeable event. Is it foreseeable when perpetuating a romance scheme to impersonate law enforcement officials, I would argue that the scheme involved celebrity connections and that the law enforcement scam was a separate issue between the Nigerian coconspirators and defendants Onwnmere and Abdalkareem. Mr. Anagor was not privy to these actions nor did he have any direct involvement in this matter.

Mr. Anagor while admittedly recruited Defendant Onwumere to be part of the romance law scam, he had no further leadership nor supervisory roles in the conspiracy. He like others involved were the conduit of the Nigerian coconspirator to funnel money as directed by Nigerian defendants who perpetuated the fraud. He acknowledges that what he did was wrong and that individuals were hurt financially. He accepts responsibility and punishment for his actions.

## GUIDELINE CALCULATIONS

The probation calculated Mr. Anagor as a Total Offense level of 23 and a Criminal History of I. This computes to a period of incarceration 46 to 57 months for Counts 2 and 4. There also is a minimum mandatory 2-year sentence on Count 36 which must run consecutive to Counts 2 and 4. This places Mr. Anagors **effective guideline range as 70 to 81 months of incarceration.**

The government argues in their amended objections to the PSIR ( DKT #104) that the correct calculation should be higher. The government through their objections argues enhancements that add 6 (six) additional offense level points which places Mr. Anagor's Total Offense level at 27 and Criminal History category of I. This translates to **a guideline range of 94 to 111 months of** i**ncarceration** when the 2-year mandatory consecutive sentence in Count 36 is factored into the guidelines.The government furthermore asks the Court for a further enhancement post filing of its objections to the probation's office calculated guideline range and sentence, arguing that Mr. Anagor should serve**13 ( t**h**irteen) years of incarceration.** The defense objects and would argue that it exceeds the spirit of the plea agreement and is greater than necessary to punish Mr. Anagor.

## RECENT SENTENCING LAW

Section 3553 (a) of Title 18 of the United States Code instructs District Courts to impose a sentence "sufficient, but not greater than necessary" to comply with the four purposes of sentencing set forth in Section 3553 (a) (2).  The four purposes of Section 3553 (a) (2) are:

(a) The need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment.

(b) The need to afford adequate deterrence to criminal conduct.

(c) The need to protect the public form further crimes of the Defendant; and

(d) The need to provide the Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The mandate to impose a sentence "sufficient, but not greater than necessary" is often referred to as the Parsimony Provision.  The Parsimony Provision is not just another "factor" to be

considered along with the others set forth in Section 3553 (a). It sets an independent limit on the sentence a Court may impose.

In determining the sentence minimally sufficient to comply with the Section 3553 (a) (2) purposes of sentencing, the Court must consider several factors listed in Section 3553 (a). These factors include (1) "the nature and circumstances of the offense and the history and characteristics of the Defendant"; (2) "the kind of sentence available"; (3) the guidelines and policy statements issued by the Sentencing Commission, including the (now non-mandatory) guideline range; (4) the need to avoid unwarranted sentencing disparity; and (5) the need to provide restitution where applicable [18 USC Section 3553 (a) (1), (a) (3), (a) (5)-(7)]. Neither the statute nor <u>United States v. Booker</u>, 543 U.S. 220, 245-46 (2005) suggest that any one of these factors is to be given greater weight than any other factor. What is clear is that all factors <u>are subservient to Section 3553 (a)'s mandate that the purpose is to impose a sentence not greater than necessary to</u> comply with the four policy purposes of sentencing.

To further elaborate on Section 3553(a)'s mandate to impose a sentence not greater than necessary to comply, Counsel would argue that Mr. Anagor has a Criminal History Category I with zero history. Due to the nature of the offense which he plead guilty, he does not become safety valve eligible (no two-point credit) which calculates into a higher guideline calculations or more prison time. We acknowledge that the crime was serious through our guilty plea and stipulation of facts; however, contend that the low end of the PSIR calculations of 70 months is sufficient coupled with the agreed restitution provided by the plea agreement. This sentence is reasonable and would not be a sentence greater than necessary to comply with the 3553(a) mandate.

5
Case 2:24-cr-00019-DCLC-CRW    Document 121    Filed 10/31/25    Page 5 of 8
PageID #: 895

Counsel would further argue that the government's position in its argument that Mr. Anagor should receive a 13 year sentence and his codefendant's receive 9 years and 11 years respectively (See United States motion for upward departure/variance filed October 29,2025) would be an unwarranted sentence disparity between the defendants in view of their relationship and involvement in the conspiracy. Mr. Anagor while conceding he recruited Mr. Onwumere, he had no direct involvement with Victim 1 and others subjected to the scams. Victim 1 was a scam perpetuated between the Nigerian conspirators and Defendants Onwumere and Abdalkareem.

## PERSONAL HISTORY AND CHARACTERISTICS

The Defendant is a naturalized United States citizen from Nigeria and was serving as a member of the United States Army at the time these events occurred and at the time of his arrest. He has agreed that he recruited Defendant Onwumere while they received basic training into the romance scam with a relative in Nigeria. The romance scam entailed the utilization of fictitious social media accounts to impersonate famous persons such as celebrities to develop a relationship for the purpose of defrauding these individuals out of money. The money was directed to the individual living in Nigeria and defendant was rewarded with a small percentage of the funds.

The defendant grew up in an abusive household and was sent to live with relatives at a young age and compelled to work a lot. He came to the United States in 2022 and became a naturalized citizen in 2024. He notes that he believes that he is addicted to alcohol and requests any and all rehabilitative services to defeat this addiction. He notes that his health both mental and physical are good and further notes the onset of depression since his arrest and incarceration.

Mr. Anagor completed the 12th grade in Nigeria and had enrolled in Grand Canyon University at the time of his arrest and would seek to further his education while serving his sentence. He would further note that he is subject to a dishonorable discharge from the Army once he has been sentenced and that he has received divorce papers from his wife.

## **CRIMINAL HISTORY**

Mr. Anagor has had a very limited involvement in criminal matters. His criminal record is noted in paragraphs 107 through 113 of the PSIR. These records indicate that he is a Criminal History category I individual with a zero score .

## **CONCLUSION**

While Mr.Anagor acknowledges the Probation Office correctly calculates his sentencing guideline range, he asks the Court for leniency. Mr. Anagor has a very limited criminal history which is reflective in his category I classification. Once arrested, Mr. Anagor has admitted his wrongdoings and entered into an agreement promptly. Mr. Anagor asks this Court for leniency in sentencing and hopes the Court considers the low end of the sentencing guidelines along with restitution in order that he can hopefully make some things right for his misdeeds as just and appropriate punishment.

Mr. Anagor also requests the Court to recommend that he receive a complete medical, psychological, vision and dental exam. He further requests that he be afforded any and all educational opportunities provided within the Bureau of Prisons. He further asks the Court to consider recommending the prison facility in Buckner North Carolina to serve his sentence.**He asks the Court to sentence him to no more than 70 months incarceration**.

        Respectfully submitted,
        Stephen O. Anagor
        By:   /s/ Charles L. Bledsoe
               Charles L. Bledsoe

Bledsoe Law Office, P.C.
408 Wood Avenue East
P.O. Box 657
Big Stone Gap, Virginia 24219
Telephone: 276-523-5462
Fax: 276-523-5481

## **CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing document was electronically filed with the Court and will be forwarded to the Assistant United States Attorney on this 30th day of October, 2025.

/s/ Charles L. Bledsoe